## Case No. 12,986.

### In re SMITH.

[8 N. B. R. 401; 6 Chi. Leg. News. 33; 5 Leg. Gaz. 350; 18 Int. Rev. Rec. 167.] [1]

District Court, N. D. Georgia. Oct. 3, 1873.

BANKRUPTCY — CONSTITUTIONALITY OF AMENDED ACT—EXEMPTIONS.

1. The amendment to the bankrupt act of March 3d, 1873 [17 Stat. 577], *held* constitutional in this case.

    [Cited in Re Jordan, Case No. 7,515; Darling v. Berry, 13 Fed. 670.]

2. A bankrupt who files his petition after the passage of Act March 3, 1873, is entitled to have the assignee set apart to him the exemptions

1 [Reprinted from 8 N. B. R. 401, by permission. 18 Int. Rev. Rec. 167, contains only a partial report.]

"as existing in the place of his domicil on the 1st day of January, 1871," even though there are judgments in force rendered prior to the passage of the state act giving the increased exemption.

    [Cited in brief in Wooster v. Bullock, 52 Vt. 50.]

3. The amendment of March 3, 1873, does not destroy the uniformity of the bankrupt act.

4. Congress has power to destroy existing contracts and to release liens held for their enforcement.

    [Cited in Re Everitt, Case No. 4,579.]

[In the matter of John W. Smith.]

Peeples & Howell, for assignee.
Boynton & Dismuke, for bankrupt.

ERSKINE, District Judge. This petition in bankruptcy was filed in this court on the 24th of May, 1873. The assignee, because there are judgments of force against the bankrupt, rendered in the state courts prior to July 21st, 1868, refused to set apart other property than that allowed by the exemption laws 1864. The bankrupt claims the exemption allowed by the constitution and laws of Georgia as existing in the year 1871. The register, after argument before him, held that the bankrupt was entitled to the benefit of the exemption laws of this state as they stood in 1871, and made the following order: "Let the assignee set apart as exempted property: First. The necessary household and kitchen furniture, and such other articles and necessaries of the bankrupt as he shall designate and set apart, having reference in the amount to the family, condition and circumstances of the bankrupt, but altogether not to exceed in value the sum of five hundred dollars. Second. The necessary wearing apparel of the bankrupt and that of wife and children, without valuation. Third. The uniform, arms, and equipments of a soldier in the militia, if he be such, or if he is in the service of the United States. Fourth. Such other property as now is exempt from attachment, or seizure, or levy on execution by the laws of the United States. Fifth. Real estate to the value of two thousand dollars in specie, and personal property to the value of one thousand dollars in specie."

The objections of the assignee were confined to the fifth item of the register's order. The validity of certain portions of the fourteenth section of the bankrupt act of March 2, 1867 [14 Stat. 517], and the amendatory act of June 8, 1872 [17 Stat. 334], and that of March 3, 1873, is questioned. But counsel for the assignee has pressed his argument with more directness against the constitutionality of the act of March 3, 1873. The fourteenth section of the original act exempts, in addition to certain property of various kinds excepted from the provisions of this section, "such other property not included in the foregoing exceptions as is exempted from levy and sale upon execution or other process or order of any court by the

laws of the state in which the bankrupt has his domicil at the time of the commencement of proceedings in bankruptcy, to an amount not exceeding that allowed by such state exemption laws in force in the year 1864." The amendment of June 8, 1872, struck out the words "1864," and inserted in lieu thereof "1871." To this followed the amendatory or declaratory act of March 3, 1873, (just referred to) which declares "that the exemptions allowed the bankrupt by said amendatory act" (of June 8, 1872,) "should, and it is hereby enacted that they shall be the amount allowed by the constitution and laws of each state, respectively, as existing in the year 1871, and that such exemptions be valid against debts contracted before the adoption and passage of such state constitution and laws, as well as those contracted after the same. and against liens, by judgment or decree of any state court, any decision of such court rendered since the adoption and passage of such constitution and laws to the contrary notwithstanding."

The bankrupt act of March 2, 1867, the amendatory acts, and the declaratory act of 1873, make but one system of law; they are therefore to be taken together, and interpreted and construed as one entire law or statute. One of the objections taken by counsel for the assignee to the constitutionality of this law, was that it does not, in certain of its provisions, possess the element of uniformity as required by the fourth clause of the eighth section of the first article of the national constitution—the clause which confers on congress the power "to establish uniform laws on the subject of bankruptcies throughout the United States"—and the main reason presented was that it gave a bankrupt in one state property, as exempted from the pursuit of his creditors, to a larger or lesser amount or value than it bestowed upon a bankrupt in another state, and he illustrated his theory by examples: If the bankrupt, he argued, is domiciled in Georgia, he will (at least if the head of a family) be entitled to an exemption to the value of two thousand dollars in specie in realty, and one thousand dollars in specie in personalty; if the bankrupt is a resident of Mississippi, he would be entitled to property, as exempted, to the value of four thousand dollars; if of California to a still larger exemption, and if of Maine to an exemption far less in value than that allowed in any of the states named. This diversity, as was urged, showed clearly the want of uniformity in the statute, and. consequently, its repugnancy to the constitution of the United States.

The argument is plausible and apparently sound; but when the mind rises from effects to causes, the fallacy of the reasoning is revealed: for congress has never claimed the power, under this or any other provision of the constitution. to annul state exemption laws. or to mould them to a uniformity and equality throughout the United States. From this brief statement, it will, I apprehend, be seen that the words "uniform laws," as used in this clause of the constitution, have no reference to, or in anywise affect, the exemption laws of the several states, no matter how variant they may be. And this view is not without authority to support it. In Re Beckerford [Case No. 1,209], argued before Mr. Justice Miller of the supreme court of the United States, and Krekel, J., in the federal circuit court for the Western district of Missouri, this question came up for decision, and Judge Krekel, in delivering the opinion of the court, said, "It is insisted that the fourteenth section, already cited, having adopted the exemption laws of the state in which the bankrupt is domiciled, and these exemptions having no regard to uniformity, violate the constitutional provision authorizing uniform laws throughout the United States to be passed. If congress saw cause to pass bankrupt laws under the grant of power referred to, the injunction is that they shall be uniform throughout the United States. So far as the distribution of the bankrupt's assets— the point under consideration—is concerned, the law is uniform. * * * Though the states vary in the extent of their exemptions, yet what remains the bankrupt law distributes equally among the creditors." A like view of this question was taken by Rives, J., in Re Wylie, 5 Am. Law T. 330, and in Re Kean [Case No. 7,630]. So. likewise, by Dick, J., in Re Jordan [Id. 7,514]. See, also, Bump Bankr. (6th Ed.) 135. If the reason which I have advanced is too narrow to show that the bankrupt act of 1867, and the amendments cited are in harmony with the clause of the constitution requiring laws on the subject of the bankruptcies to be uniform throughout the United States. then I am content to rest satisfied upon the broader reason of the authorities quoted or referred to. A bankrupt system or law must be regarded as comprehensive and not partial in its operation; so, too, it should be accompanied with enlightened principles of equity, that honesty may be encouraged and protected, and fraud suppressed. True, it is a general tenet of ethics, that the author of any damage ought in conscience to repair it. But if this rule be extended to the case of a debtor who makes default of payment at the time appointed, by means whereof the creditor sustains some extraordinary detriment, a strict application of the maxim would in many cases be unjust; for it must be also recollected that men should not be held accountable for unforeseen contingencies—contingencies proceeding from a concurrence of conflicting circumstances over which the debtor could have had no control. No one can peruse the declaratory act of March 3, 1873,—and which it may be said, re-enacts the amendatory act of June 8, 1872,—without perceiving the prominence of its retrospective features, also its power to impair the obligation of contracts. and to displace liens created by judgments and decrees rendered in state courts. But if there be no con-

stitutional infirmity in this enactment it must be taken as absolute and uncontrollable. And there is nothing in the federal constitution which precludes congress from passing laws impairing the obligation of contracts; the inhibition contained in the first clause of the tenth section of the first articles of that instrument is confined to the states respectively. White v. Hart, 13 Wall. [80 U. S.] 646; Gunn v. Barry [15 Wall. (82 U. S.) 610]. In modern days laws of bankruptcy are considered as laws calculated for the benefit of trade, in its largest sense, and are founded on principles of humanity as well as justice; and being for the good of trade, the thought suggests itself, that if a national bankrupt law did not possess the element of retrospectiveness, and the power to impair, or, if necessary, to discharge the obligation of antecedent contracts, it would but half perform its functions. And, indeed, it does not strike my mind that it would be a purely speculative postulate to say, that if the constitution had not expressly granted to congress the power to establish laws on the subject of bankruptcies; still the right of the legislature to enact laws of this nature—laws so intimately connected with the regulation of commerce at home and abroad and with manufacturing and agricultural interests—would, it seems to me, be within its legitimate powers, as an attribute of sovereignty in the nation—as essentially so as the paramount right of eminent domain, or the authority to pass embargo laws, or laws for the erection of forts, lighthouses or public buildings. But notwithstanding the expression of any theoretical ideas, the court has been guided to its conclusion solely by those reasons which were fairly deducible from the language of the constitution itself. Confiding the decision to the issues made, the validity of the general bankrupt law of 1867, the amendatory act of 1872, and also, (so far at least as the present matter in controversy is involved,) the declaratory act of 1873 is assumed, and cannot, I think, be treated as debatable.

And that I may not fall into the mischievous habit of not indicating the sources of my information I will name, and, when necessary, quote from the cases and authorities mainly consulted, to sustain the views exhibited. The fifth section of the act of congress of March 3d, 1797, (1 Stat. 512,) gave a preference to the United States in cases of insolvency, and the supreme court, in U. S. v. Fisher, 2 Cranch [6 U. S.] 358, decided the act to be constitutional; and also that it was not confined to persons accountable for public money, but extended to debtors of the government generally. In Evans v. Eaton [Case No. 4,559], Mr. Justice Washington said: "There is nothing in the constitution of the United States which forbids congress to pass laws violating the obligation of contracts, although such a power is denied to the states individually." Similar language was held by Mr. Justice McLean, in Bloomer v. Stolley [Id. 1,559]; and see Satterlee v. Matthewson, 2 Pet. [27 U. S.] 330.

Chief-Justice Chase, in pronouncing the decision of the court in Hepburn v. Griswold, 8 Wall. [75 U. S.] 603, remarked that "congress has express power to enact bankrupt laws, and we do not see that a law made in the execution of any other express power, which, incidentally only, impairs the obligation of a contract, can be held to be unconstitutional for that reason." Mr. Justice Miller, in his dissenting opinion in the same case (concurred in by justices Swayne and Davis,) said that "while the constitution forbids the states to pass such laws" (laws impairing the obligation of contracts) "it does not forbid congress. On the contrary, congress is expressly authorized to establish a uniform system of bankruptcy, the essence of which is to discharge debtors from the obligation of their contracts." Mr. Justice Field, in his dissenting opinion in the Legal Tender Cases, 12 Wall. [79 U. S.] 457, said: "The only express authority for any legislation affecting the obligation of contracts is found in the power to establish a uniform system of bankruptcy, the direct object of which is to release insolvent debtors from their contracts upon the surrender of their property." Mr. Justice Strong, in giving the judgment of the court in the Legal Tender Cases, supra, said: "Nor can it be truly asserted that congress may not, by its action, indirectly impair the obligation of contracts, if by the expression be meant rendering contracts fruitless or partially fruitless. Directly it may, confessedly, by passing a bankrupt act embracing past as well as future transactions. This is obliterating contracts entirely. * * * And it is no sufficient answer to this to say it is true only when the powers exerted were expressly granted. There is no ground for any such distinction." Dick, J., in Re Jordan, and Rives, J., in Re Kean [supra], have held the act of 1873, amendatory of the general bankrupt law, constitutional. And the court is indebted also to Register Murray, for his written opinion upholding the validity of the act.

The act of 1873, as previously observed, declares it was the true intent and meaning of the act of 1872, that the exemptions "as existing in the year 1871," shall be valid against debts contracted before the adoption and passage of such state constitution and laws as well as those contracted after the same, and against liens by judgment or decree of any state court, etc. This court, in a series of cases which arose prior to the declaratory act of 1873, ruled that, under the general bankrupt act of 1867, and also under the act of 1872, state exemptions were paramount debts preexisting the passage of these acts; and none of these rulings were ever seriously questioned here. But whether, before the passage of the declaratory act of 1873, a court would have been warranted in so interpreting and construing the acts of 1867 or 1872, as to adjudge exemptions valid against liens by judgment or decree of state courts it is now too late to discuss. Congress has, however, by the act of 1873, declared the true intent and meaning of

the act of the preceding year, and, so far as the case now before me is concerned, the bankrupt having filed his petition in bankruptcy nearly two months subsequent to the passage of the act of 1873,—the court decides that the exemptions claimed by the bankrupt supplant the liens of state judgments and decrees. See Cooley, Const. Lim. (2d Ed.) 90–94, and the cases cited by that learned and accomplished jurist, and also, in Re Kean, supra.

The assignee is instructed to carry into effect the order made by Register Murray.

Affirmed.